**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Redline Realty LLC, | No. CV-25-01147-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Colony Insurance Company, et al., | |
| Defendants. | |

This is an insurance dispute brought by Plaintiff Redline Realty, LLC ("Redline Realty" or "Plaintiff")—as the assignee of certain claims held by Macias Construction, LLC ("Macias")—against Defendants Colony Insurance Company ("Colony"), Gallagher Bassett Services, Inc. ("Gallagher Bassett"), and Cavello Bay Reinsurance Ltd. ("Cavello Bay") (collectively, "Defendants").[1]

Pending before the Court is Cavello Bay's motion to dismiss for lack of personal jurisdiction. (Doc. 19.) Plaintiff opposes the motion and, in the alternative, seeks limited jurisdictional discovery regarding the terms of a loss portfolio transfer agreement between Cavello Bay and Colony ("LPT Agreement"). (Doc. 29 at 4). For the reasons that follow, the Court grants Plaintiff's request for limited jurisdictional discovery and holds Cavello Bay's motion to dismiss in abeyance until the limited jurisdictional discovery and supplemental briefing are complete.

…

---
[1] The remaining defendants have been terminated. (Docs. 30, 34.)

**BACKGROUND**

I. <u>Relevant Jurisdictional Facts</u>

When ruling on a motion to dismiss for lack of personal jurisdiction, "uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor," but a "plaintiff may not simply rest on the bare allegations of the complaint." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up). The Court may also consider "deposition testimony and other evidence" outside of the pleadings to determine whether it has personal jurisdiction. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995). *See also Lee v. Plex, Inc.*, 773 F. Supp. 3d 775, 769 (N.D. Cal. 2025) ("The court may also consider declarations and other evidence outside the pleadings.") (cleaned up); 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 12 (2025) ("The plaintiff must supply specific facts in support of personal jurisdiction.").

Cavello Bay provided a declaration from Robert Morgan ("Morgan"), its Chief Executive Officer, in support of its motion to dismiss. (Doc. 19-2.) In response, Plaintiff provided a letter concerning the LPT Agreement (Doc. 29-1) and a declaration from its counsel concerning its unsuccessful attempts to obtain a copy of the LPT Agreement (Doc. 29-2). In reply, Cavello Bay provided additional email correspondence concerning Plaintiff's unsuccessful attempts to obtain a copy of the LPT Agreement. (Doc. 32-1.)

Accordingly, the summary of facts below is based on the allegations in the complaint (Doc. 1 at 6-30), where uncontroverted by Cavello Bay; the assertions in Morgan's declaration, where uncontroverted by Plaintiff's evidence; and Plaintiff's evidence.

A. **The Parties**

Plaintiff is a Nevada limited liability company "engaged in the business of real estate ownership and development in the State of Arizona." (Doc. 1 at 6, 7 ¶ 2.)

Colony, an insurer, is a Virginia corporation. (*Id.* at 7 ¶ 3.) Colony is a subsidiary

of Argo Group International Holdings, Ltd. ("Argo"). (*Id.*)[2]

Gallagher Bassett is a Delaware corporation and "third party administrator to certain insurance companies." (*Id.* at 7 ¶ 4.) Gallagher Bassett "was a third party administrator responsible for the handling and defense of certain of [Colony's] claims, including the claim at issue in this lawsuit, Colony Claim Number L-099-1040536 and Gallagher Bassett Claim Number 040154-077600-GD01 (the 'Subject Claim')." (*Id.*)

Cavello Bay is a Bermuda-based reinsurer. (*Id.* at 7 ¶ 5.) Cavello Bay is a subsidiary of Enstar Group Ltd. ("Enstar"). (*Id.*) Morgan's declaration states—and Plaintiff does not appear to dispute—that Cavello Bay (1) "is not and has never been an Arizona resident"; (2) "does not have any offices in Arizona, has no agents in Arizona, and maintains no employees in Arizona"; (3) "has never maintained a telephone or telefax number or address in Arizona"; (4) "does not pay income tax in Arizona"; and (5) "maintains no bank accounts in Arizona and does not own or rent any real property in Arizona." (Doc. 19-2 ¶¶ 5-9.) "Cavello Bay has recently been licensed as a reciprocal reinsurer in Arizona." (*Id.* ¶ 10.) Although the complaint alleges that Cavello Bay is "doing business in [the] State of Arizona as a reciprocal reinsurer" (Doc. 1 at 7 ¶ 5), Morgan avows that "Cavello Bay . . . does not conduct business in Arizona" (Doc. 19-2 ¶ 10).

B.     **The Underlying Lawsuit And Assignment Of Claims**

In 2017, Plaintiff's "managing member and predecessor in interest, Dean Slover, engaged defendant Colony's insured, Macias," in a remodeling and construction project for residential property located in Scottsdale, Arizona (the "Subject Property"). (Doc. 1 at 8 ¶ 16.)

Plaintiff later alleged that "Macias's work on the Subject Property was defective and caused physical damage to property other than its work." (*Id.* at 9 ¶ 17.) Plaintiff thus filed suit "against Macias in the Superior Court of the State of Arizona, Maricopa County,

---

[2] Morgan's declaration states that Argonaut Insurance Company ("Argonaut"), rather than Argo, is the parent company of Colony. (Doc. 19-2 ¶ 3.) This distinction is immaterial for present purposes.

- 3 -

Case No. CV2022-010268 alleging construction defects and resulting property damage to the Subject Property (the 'Underlying Lawsuit')." (*Id.* at 9 ¶ 20.)

Pursuant to two Commercial General Liability insurance policies issued by Colony to Macias (the "CGL Policies"), Macias "tendered the Underlying Lawsuit for defense and indemnity" by Colony. (*Id.* at 9-10 ¶¶ 23-24, 27-28.) Colony initially "undertook Macias's defense of the Underlying Lawsuit," assigning the defense ultimately to Mr. Tappe, an attorney at Righi Fitch Law Group, P.L.L.C. (*Id.* at 10 ¶ 29.)

In a letter dated July 3, 2023 ("the Letter"), "Colony's parent company, Argo, advised Macias's defense attorneys that effective on or about July 21, 2023, pursuant to a Loss Portfolio Transfer between Colony and Cavello Bay, claim handling for the Subject Claim and the Underlying Lawsuit was being transferred from Colony to a third party administrator, Gallagher Bassett, with claim oversight to be provided by Cavello Bay." (*Id.* at 10 ¶ 32.)[3] The Letter, which Plaintiff attaches as an exhibit to its response brief, specifically states as follows:

> [Colony], a subsidiary of [Argo], is subject to a Loss Portfolio Transfer (LPT) entered into with [Enstar's] subsidiary [Cavello Bay] concerning various U.S. casualty insurance portfolios. Under the LPT, certain [Colony] claims with loss date between January 1, 2011 and December 31, 2019 were assumed by Cavello Bay. The claim referenced above filed with [Colony] appears to be subject to the LPT.
>
> Claims under the LPT previously administered by [Colony] Claims Professionals are now migrating to Third Party Claims Administrator Gallagher Bassett for claims handling, with oversight by Cavello Bay. The claims will transition on or about July 21, 2023.

(Doc. 29-1.)

Cavello Bay does not appear to dispute that the Letter was sent to Macias's attorneys; nor does it appear to dispute that the LPT Agreement exists. (Doc. 19-2 ¶ 13

---

[3] The complaint alleges that the LPT Agreement is a contract between Colony and Cavello Bay. (Doc. 1 at 10 ¶ 32.) Morgan's declaration seems to indicate that the LPT Agreement is an agreement between Cavello Bay and Argonaut, Colony's parent company. (Doc. 19-2 ¶ 3.) The Letter, although from Argo, does not clearly specify whether the LPT Agreement is between Cavello Bay and Argo/Argonaut or Cavello Bay and Colony. (Doc. 29-1.) This distinction is immaterial for present purposes.

- 4 -

[Morgan: "Cavello Bay's obligations, if any, under the Argonaut LPT are solely as a reinsurer of Argonaut and its subsidiaries, including Colony."].)

Cavello Bay does, however, appear to dispute some of the contents of the Letter and its description of Cavello Bay's obligations under the LPT Agreement. Morgan asserts in his declaration that "Cavello Bay is a reinsurance company" that "issues reinsurance contracts that are used to effectuate Loss Portfolio Transfer ('LPT') agreements with insurance companies, including . . . the parent company of [Colony]." (*Id.* ¶ 3.) Morgan further states that "[l]iability, if any, under the Colony Insurance policy at issue in this litigation has not been novated, transferred, or *assumed* by Cavello Bay, but remains the responsibility of Colony," and that "[n]o privity of contract exists between Cavello Bay and an insured(s) or claimant(s) under the Colony policy at issue in this litigation." (*Id.* ¶¶ 12-13, emphasis added.) However, the italicized portion of this statement appears to conflict with the passage in the Letter that "[u]nder the LPT [Agreement], certain [Colony] claims . . . were assumed by Cavello Bay." (Doc. 29-1.) To the extent this constitutes a controverted fact, the Court resolves it in Plaintiff's favor and thus assumes (at least for now) that Cavello Bay "assumed" certain Colony claims under the LPT Agreement.

Morgan also avows in his declaration that "Cavello Bay does not handle claims and is not the claim administrator with respect to the . . . LPT [Agreement] or the Colony insurance policy at issue in this litigation." (*Id.* ¶ 11.) Plaintiff does not appear to dispute that fact. The complaint alleges that "claim handling . . . was being transferred from Colony to . . . Gallagher Bassett," while "claim oversight" would be "provided by Cavello Bay." (Doc. 1 at 10 ¶ 32. *See also id.* at 16 ¶ 65 [distinguishing between "third party administrators handling claims under the Policies such as Gallagher Basett, [and] those delegated with responsibility to supervise claim handling such as Cavello Bay"].) The same distinction—between Gallagher Bassett's claim "handling" and Cavello Bay's claim "oversight"—is discussed in the Letter. (Doc. 29-1.)

Cavello Bay's counsel, in emails sent to Plaintiff's counsel and attached to Cavello Bay's reply brief, disputes Cavello Bay's oversight responsibilities. (Doc. 32-1 at 3

- 5 -

1  ["Cavello Bay did not provide oversight."].)  To the extent this constitutes a controverted
2  fact, the Court resolves it in Plaintiff's favor and thus assumes (at least for now) that
3  Cavello Bay had claim oversight, but not claim handling, responsibilities under the LPT
4  Agreement.
5        On April 1, 2024, approximately nine months after the Letter was sent, "a mediation
6  was held in the Underlying Lawsuit" in which "a claim representative of Gallagher Bassett,
7  participated . . . [and] abandoned the mediation stating for the first time that Colony was
8  denying coverage for the Subject Claim including the Underlying Lawsuit and that it would
9  be withdrawing its defense of Macias."  (Doc. 1 at 10-11 ¶ 33.)  The complaint does not
10 appear to allege that Cavello Bay participated in the April 1, 2024 mediation.
11       Following the mediation, Macias's defense attorney, Mr. Tappe, wrote to Gallagher
12 Bassett on two occasions requesting confirmation in writing of Colony's coverage position
13 and "demand[ing] that the insurers defend and indemnify Macias against the allegations in
14 the Underlying Lawsuit."  (*Id.* at 11 ¶¶ 35-36.)  Plaintiff alleges that "[n]either Colony,
15 Gallagher Bassett, Cavello Bay, . . . nor any other persons acting on their behalf ever
16 provided any written explanation of their refusal to continue the defense or their coverage
17 position."  (*Id.* at ¶ 35).  The complaint does not appear to allege that Mr. Tappe ever
18 contacted Cavello Bay, specifically, following the mediation.
19       Plaintiff then filed an application for default in the Underlying Lawsuit against
20 Macias on July 19, 2024, which Mr. Tappe disclosed to Colony and Gallagher Bassett on
21 July 25, 2024 "and once again demanded that the insurers continue to provide a defense to
22 Macias."  (*Id.* at 11-12 ¶¶ 37-38.)  The complaint does not allege that Mr. Tappe informed
23 Cavello Bay, specifically, of this fact—nor does it allege that Mr. Tappe demanded that
24 Cavello Bay, specifically, continue to defend Macias.
25       That same day, Mr. Tappe and his firm withdrew as counsel in the Underlying
26 Lawsuit.  (*Id.* at 12 ¶ 39.)  The complaint alleges that although "they were aware of the
27 motion to withdraw, defendants Colony, Gallagher Bassett, [and] Cavello Bay . . . never
28 instructed Macias's attorneys to continue with the defense of the Underlying Lawsuit."  (*Id.*

- 6 -

at 12 ¶ 40.)

On November 8, 2024, the Arizona state court in the Underlying Lawsuit entered a default judgment for Plaintiff and against Macias for $5,774,405.71, plus post-judgment interest. (*Id.* at 12-13 ¶¶ 43-44.)

On February 14, 2025, Macias entered into an assignment of claims and covenant not to execute (the "Assignment Agreement") with Plaintiff, which, among other things, assigned to Plaintiff Macias's claims against Colony, Gallagher Bassett, and Cavello Bay "arising out of or relating to the Lawsuit [and] Policies," "their obligations to defend and indemnify Macias for the damages alleged in the Lawsuit," and "their handling of, declination of coverage for, and refusal to defend or settle as to the Lawsuit." (*Id.* at 13-14 ¶ 49.)

II. Procedural History

On March 3, 2025, Plaintiff filed the complaint in Maricopa County Superior Court. (Doc. 1 at 6-30.)

On April 7, 2025, Defendants removed the action to this Court. (Doc. 1.)

On April 25, 2025, Cavello Bay filed the pending motion to dismiss for lack of personal jurisdiction. (Doc. 19.) The motion is now fully briefed. (Docs. 29, 32.)

**DISCUSSION**

I. Personal Jurisdiction

A. **The Parties' Arguments**

Cavello Bay argues that it is not subject to either general or specific personal jurisdiction in Arizona. (Doc. 19.) As for general jurisdiction, Cavello Bay argues that it is "neither incorporated nor maintains its principal place of business in Arizona" and "does not conduct business in Arizona." (*Id.* at 4-5.) As for specific jurisdiction, Cavello Bay argues that it has neither "purposefully direct[ed] its activities to Arizona" nor purposefully availed itself of the privilege of conducting business in Arizona. (*Id.* at 6-7.) Cavello Bay further argues that Plaintiff's allegations "generally lump [Cavello Bay] in with the other Defendants, making no allegations specifically against it." (*Id.* at 8.) Cavello Bay further

1 argues it "had no prior negotiations with Macias for issuance of . . . the CGL Policies" and "[i]n fact, . . . had no communications with Macias at all." (*Id.*)  Finally, Cavello Bay argues that "Plaintiff's claims do not arise out of Cavello Bay's Arizona activities because it has none." (*Id.*)

In response, Plaintiff does not argue that the Court has general jurisdiction over Cavello Bay. (Doc. 29.)  Rather, Plaintiff argues that "Cavello Bay's entering into the LPT Agreement constitutes purposeful directing of business activities within Arizona" because "in the LPT [Agreement] Cavello Bay bound itself to oversee or supervise Plaintiff's Arizona claim, including the" Underlying Lawsuit. (*Id.* at 3.)  Plaintiff further requests "discovery of the terms of the LPT [Agreement] . . . to determine the extent more fully to which Cavello Bay bound itself regarding Arizona based claims." (*Id.* at 4.)

In reply, Cavello Bay argues that Plaintiff's reliance on the reference to "oversight" in the Letter "fails to provide actions taken by Cavello Bay that would support a finding of jurisdiction." (Doc. 32 at 3).  Cavello Bay also disputes the relevance and "discoverability" of the LPT Agreement. (*Id.* at 5.)

B.   **Legal Standard**

A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza*, 793 F.3d at 1068 (citation omitted).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citations and internal quotation marks omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).  "Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)).  Accordingly, whether the Court has

personal jurisdiction over Cavello Bay "is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Id.*

"Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (cleaned up). Minimum contacts exist "if the defendant has continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (internal quotation marks omitted).

Plaintiff does not contend that Cavello Bay is subject to general jurisdiction in Arizona. Thus, the Court must apply the Ninth Circuit's three-prong test to determine whether Cavello Bay has sufficient contacts with Arizona to be subject to specific jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Morrill*, 873 F.3d at 1142 (citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (internal quotation marks omitted, citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citation omitted).

    C.    **Analysis**

        1.    <u>Agency Relationship And Joint Venture</u>

In its response brief, Plaintiff asserts in conclusory fashion that "Cavello Bay was an agent and/or joint venturer with Colony regarding the underlying liability claim against Macias." (Doc. 29 at 2.) In support, Plaintiff cites paragraph 7 of the complaint, which

alleges that "[u]pon information and belief, Colony, Gallagher Bassett, [and] Cavallo Bay . . . were each actual, apparent or ostensible agents of each other and joint venturers with respect to the management, handling, and defense of the Subject Claim." (Doc. 1 at 7 ¶ 7.) Paragraph 7 is alone insufficient to support the assertion of personal jurisdiction under an agency or joint venture theory. *See, e.g., Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017) (concluding that the "conclusory legal statement unsupported by any factual assertion" that "'Defendants . . . were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment . . . and are legally responsible because of their relationship with their co-Defendants'" was insufficient to establish specific jurisdiction under agency theory because there were no factual allegations of "control" as required to establish an agency relationship) (alterations in original); *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.").

Nor does Plaintiff identify any other facts or law that would support the exercise of personal jurisdiction over Cavello Bay under an agency or joint venture theory—although Plaintiff cites two Arizona state cases involving joint ventures in the insurance context, they do not address personal jurisdiction.

2. Purposeful Availment And Purposeful Direction

The first prong of the test for specific jurisdiction requires an assessment of whether Cavello Bay purposefully directed its activities toward the forum state or purposefully availed itself of the privilege of conducting activities there. *Morrill*, 873 F.3d at 1142. Courts "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Id.* However, "our cases do not impose a rigid dividing line between these two types of claims," and "the first prong may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (cleaned up).

Count One of the complaint is a breach-of-contract claim, which implicates the purposeful-availment test. Count Two is a claim for breach of the implied covenant of good faith and fair dealing.[4] Such a claim generally sounds in contract, but the Arizona Supreme Court has "concluded that there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1267 (Ariz. 1992) (cleaned up). Accordingly, the determination of personal jurisdiction will ultimately require consideration of both the purposeful-availment and purposeful-direction tests. *Davis*, 71 F.4th at 1162.

On the current record, it is unclear whether either test is satisfied. When all disputes are resolved in Plaintiff's favor, Plaintiff's evidence and allegations establish that Cavello Bay (based in Bermuda) entered into a contract (the LPT Agreement) with Colony (a Virginia corporation) under which Cavello Bay agreed to do two things: (1) "assume[]" certain Colony claims; and (2) provide "oversight" over Gallagher Bassett (a Delaware corporation) regarding the third-party claim handling being performed by Gallagher Bassett for Colony. The only connection to Arizona is that one of Colony's insureds (Macias) is based in Arizona, such that when Macias got sued, Cavello Bay may have "assumed" the claim pursuant to the LPT Agreement and/or been obligated under the LPT Agreement to provide "oversight" of Gallagher Bassett's handling of Macias's claim against Colony.

More information is necessary to determine whether Cavello Bay's apparent agreement, under the LPT Agreement, to "assume[]" certain Colony claims and provide "oversight" over Gallagher Bassett amounts to purposeful direction or purposeful availment. In large part, this is because the LPT Agreement is not part of the record and

---

[4] Count One is entitled "Breach of Contract Against Colony, Cavello Bay, and National Union" and Count Two is entitled "Insurance Bad Faith Against Defendants Colony, Gallagher Bassett, Cavello Bay, and National Union." (Doc. 1 at 14-15.) It thus appears that Cavello Bay is named as a defendant in each count. However, Plaintiff's response brief appears only to contend "that Cavello Bay was liable for breach of the duty of good faith and fair dealing implied in the Colony insurance policy at issue." (Doc. 29 at 2 [citing only paragraphs of the complaint under Count Two].)

- 11 -

the parties offer conflicting descriptions of what, if anything, Cavello Bay was obligated to do under the LPT Agreement. The record is also silent on the circumstances under which the LPT was negotiated, including when and where it was negotiated. As discussed in more detail below, the best path forward is thus to authorize limited jurisdictional discovery.

          3.      <u>Arise Out Of Or Relate To Forum Activities And Fair Play And Substantial Justice</u>

Because jurisdictional discovery is warranted to determine whether Cavello Bay has purposefully availed itself of the privilege of doing business in Arizona or purposefully directed its activities toward Arizona, the Court need not address the other two factors at this time.

II.    <u>Jurisdictional Discovery</u>

    A.    **The Parties' Arguments**

Plaintiff seeks a copy of the LPT Agreement because it is "relevant to the issue of whether and how Cavello Bay has obligated itself to oversee Arizona claims, and which likely includes other terms and conditions relating to its responsibilities for Arizona based insurance claims." (Doc. 29 at 4). Plaintiff also notes that, to the extent Cavello Bay's objections are based "on confidentiality or proprietary information grounds," Plaintiff offered to agree to a protective order to address such concerns. (*Id.*) Plaintiff asks the Court to deny Cavello Bay's motion to dismiss and allow "discovery of the terms of the LPT [Agreement] . . . to determine the extent more fully to which Cavello Bay bound itself regarding Arizona based claims." (*Id.*) The Court construes this as a request for limited jurisdictional discovery.

In reply, Cavello Bay disputes the relevance and "discoverability" of the LPT Agreement. (Doc. 32 at 5). Cavello Bay also notes that it previously offered to make the LPT Agreement available for *in camera* review, only for Plaintiff to refuse the offer. (*Id.*, citing Doc. 32-1.) Notably, Cavello Bay does not develop any argument that the LPT Agreement is somehow privileged or overly sensitive—Cavello Bay's "discoverability"

objection to disclosure of the LPT Agreement seems to be based solely on its belief that the document is irrelevant. (*Id.*)

### B. **Legal Standard**

Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation omitted). "A district court has broad discretion to 'permit discovery to aid in determining whether it has in personam jurisdiction.'" *Bus. Buyer Directory, LLC v. Nw. Cap. Appreciation, Inc.*, 2008 WL 5082264, *2 (D. Ariz. 2008) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). If "[f]urther discovery on [an] issue might well demonstrate facts sufficient to constitute a basis for jurisdiction," a district court should grant jurisdictional discovery. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (citation omitted), *abrogated on other grounds as recognized in Williams*, 851 F.3d at 1024.

### C. **Analysis**

As discussed in earlier portions of this order, the Court views the questions of whether Cavello Bay "assumed" certain Colony claims and had "oversight" responsibilities over Gallagher Bassett as "controverted," "pertinent facts bearing on the question of jurisdiction" and concludes that "a more satisfactory showing of the facts is necessary" to understand Cavello Bay's obligations under the LPT Agreement. *Boschetto*, 539 F.3d at 1020. Although "bare allegations in the face of specific denials" are not grounds for obtaining jurisdictional discovery, *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022) (citation omitted), Plaintiff's position is not based solely on bare allegations in the complaint—instead, Plaintiff relies on the Letter as its basis for suspecting that Cavello Bay purposefully availed itself of the privilege of doing business in Arizona and/or purposefully directed its activities toward Arizona. Limited jurisdictional discovery related to the LPT Agreement is thus warranted because it is based on more than a "mere hunch" and may "yield jurisdictionally relevant facts." *Id.* at 864-

1. 65 (citation and internal quotation marks omitted). Moreover, Plaintiff's request to seek limited jurisdictional discovery into the terms of an identifiable agreement is neither "broad" nor lacks "precision [as to] how such discovery could be helpful" to the Court's jurisdictional analysis. *Id.* at 865 (citation omitted).

Accordingly,

**IT IS ORDERED** that:

1. Within seven days of the issuance of this order, Cavello Bay shall produce the LPT Agreement to Plaintiff.

2. Within 14 days of the production of the LPT Agreement, Plaintiff shall file a supplemental memorandum, not to exceed seven pages, addressing whether, and if so, why, the LPT Agreement provides a sufficient basis for the Court to exercise personal jurisdiction over Cavello Bay under the applicable Ninth Circuit standards.

3. Within 14 days of when Plaintiff files its supplemental memorandum, Cavello Bay shall file a response, not to exceed seven pages.

Dated this 21st day of October, 2025.

Dominic W. Lanza
United States District Judge